UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN HEGRENES, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MORTEN NILSEN, et al.,<br><br>*Defendants.* | Civil Action No. 16-2271<br><br>ORDER |

**THIS MATTER** comes before the Court by way of Plaintiffs John Hegrenes's ("Hegrenes"), LifeClub International, S.A.'s, and LifeClub International LTD.'s (collectively, "LifeClub," and, together with Hegrenes, "Plaintiffs") unopposed Renewed Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2),[1] ECF No. 116, against Defendants Orion Trading Institution, Orion Trading Management, Top Unit Management (collectively, the "Entity Defendants"), and Baard Jordal ("Jordal," and, together with the Entity Defendants, "Defendants");

and it appearing that this action arises out of Defendants' alleged misappropriation of Plaintiffs' funds provided pursuant to Cooperation Agreements for investments in the foreign currency exchange ("Forex") market and related material misrepresentations and omissions in violation of federal and New Jersey law, Compl. ¶¶ 12-46, ECF No. 1.1;[2]

and it appearing that Defendants have failed to answer the Complaint or otherwise respond as of the date of this Order;

---

[1] In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by [the] defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005).

[2] The Court reincorporates here all findings of fact made in the Court's prior Order for Default Judgment dated January 3, 2020, ECF No. 108. Additionally, all terms not otherwise defined herein have the same meaning as provided in that Prior Order.

1

and it appearing that on May 18, 2016 and July 27, 2017, the Clerk of Court entered default against the Entity Defendants and Jordal, respectively, ECF Nos. 9 & 59;

and it appearing that on June 14, 2019, Plaintiffs filed a Motion for Default Judgment seeking entry of judgment against Defendants, ECF No. 105;

and it appearing that on January 3, 2020, the Court issued an Order denying without prejudice Plaintiffs' Motion, allowing Plaintiffs to file an amended motion curing noted deficiencies regarding notice on the Entity Defendants, personal jurisdiction, and its statement of a claim in Count Three for a violation of Section 10(b) of the Securities and Exchange Act of 1934, ECF No. 108 ("Prior Default Order");

and it appearing that on September 18, 2020, Plaintiff filed the instant Renewed Motion for Default Judgment, ECF No. 116;

and it appearing that a default judgment may be entered only against a properly-served defendant, see E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d 560, 567 (D.N.J. 2014);

and it appearing that the Court previously found that service was properly effected on Jordal, but the Court was unable to determine whether service was proper on the Entity Defendants because Plaintiffs had not demonstrated that Morten Nilsen ("Nilsen")[3] was authorized to accept service on behalf of the Entity Defendants on April 1, 2016, the date on which Nilsen was served, Prior Default Order at 5;

and it appearing that service is properly effectuated on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1)(B), or

---

[3] Defendants Morten and Ninya Nilsen, New Jersey citizens, were dismissed from this action following a settlement and stipulation of dismissal. ECF No. 98.

in accordance with N.J. Ct. R. 4:4-4(a)(6), which further permits service on a foreign corporation by serving "a person at the principal place of business of the corporation in [New Jersey] in charge thereof, or if there is no place of business in [New Jersey], then on any employee of the corporation within [New Jersey] acting in the discharge of his or her duties . . . subject to due process of law;"

and it appearing that Plaintiffs now present evidence that as of May 2016, after Nilsen was served on behalf of the Entity Defendants, Orion and TUM were still active companies and in good standing in Panama, and Nilsen was still publicly listed as the Director and Secretary of these companies, Hegrenes Supp. Cert. Exs. A-B, ECF Nos. 116.3-4;

and it appearing that because Nilsen was an officer of the Entity Defendants performing his duties in New Jersey at the time he was served, the Court therefore finds that Defendants were properly served;

and it appearing that before entering default judgment, the Court must determine whether it has personal jurisdiction over the parties, see Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Import & Export Corp., 596 F. Supp. 2d 842, 848 (D.N.J. 2008);

and it appearing that the Court previously noted it was "unable to determine whether it has personal jurisdiction over Defendants because Plaintiffs have not set forth with reasonable particularity facts demonstrating that each of the Defendants established constitutionally-sufficient minimum contacts with the forum," Prior Default Order at 7;

and it appearing that minimum contacts analysis under the Securities and Exchange Act of 1934 focuses on "the relationship among the defendant, the forum, and the litigation" and the "contacts must have resulted from the defendant's purposeful conduct toward the forum state," Derensis v. Coopers & Lybrand Chartered Accts., 930 F. Supp. 1003, 1014 (D.N.J. 1996) (internal citations omitted);

3

and it appearing that Plaintiffs have now put forth evidence that Nilsen, acting as a corporate officer for the Entity Defendants, conducted significant parts of Defendants' scheme from New Jersey, including "preparing and transmitting reports regarding fund activities and confirming all deposits and transactions," Certification of Jorn Kristensen ("Kristensen Cert.") at 2, ECF No. 116.14, being copied on "virtually all correspondence" related to Plaintiffs' funds, and executing trades on behalf of Plaintiffs, Hegrenes Supp. Cert. ¶¶ 5-6;

and it appearing that these actions taken by the Entity Defendants' corporate representative from New Jersey amount to sufficient minimum contacts for purposes of establishing personal jurisdiction over the Entity Defendants, see Derensis, 930 F. Supp. at 1014 (considering whether a defendant is "doing business in the United States" or "doing an act in the United States" as relevant for personal jurisdiction analysis);[4]

and it appearing that Plaintiffs however have not established that the Court has personal jurisdiction over Jordal as Jordal appears to have never performed any task on behalf of the Entity Defendants in the United States;[5]

---

[4] In the absence of arguments from Defendants to the contrary, the Court finds it appropriate in this instance to impute the contacts of their corporate officer to the Entity Defendants for purposes of establishing personal jurisdiction here. See In re Royal Dutch/Shell Transp. Sec. Litig., 380 F. Supp. 2d 509, 551 (D.N.J. 2005) ("Finally, as Defendant Watts submits no arguments which convince the Court that asserting jurisdiction over him would violate notions of fair play and substantial justice, this Court concludes that jurisdiction over this foreign defendant is reasonable.").

[5] Plaintiff' Renewed Motion argues that Jordal is a "controlling person" of the Entity Defendants and thus is jointly and severally liable for the Entity Defendants' securities violations. See Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 484 (3d Cir. 2013) (explaining under the Securities and Exchange Act, a corporate officer can be held jointly and severally liable as a "controlling person" for the violations of a controlled corporation, so long as the controlling person was a "culpable participant" in the "act or acts constituting the violation or cause of action"). Plaintiffs briefly assert that "[t]he Court can exercise personal jurisdiction over corporate officers that are liable as participants in the wrongful conduct or control persons." Renewed Motion at 28. However, the two cases they cite in support of this proposition are distinguishable from the instant case where there is no evidence Jordal himself conducted business in New Jersey nor caused harm in New Jersey. See Derensis, 930 F. Supp. at 1014 (D.N.J. 1996) (corporate officers disseminated allegedly fraudulent financial statements that effected a U.S. market); Landry v. Price Waterhouse Chartered Accts., 715 F. Supp. 98, 101 (S.D.N.Y. 1989) (corporate officers traded on U.S. market).

and it appearing that "[a] court will deny a default judgment if the complaint fails to state a claim under the motion to dismiss standard," Budge v. Arrianna Holding Co., LLC, No. 13-0056, 2014 WL 1705830, at *5 (D.N.J. Apr. 29, 2014);

and it appearing that the Court previously found that Plaintiffs had failed to state a claim for a Section 10(b) violation because they had not satisfied Federal Rule of Civil Procedure 9(b)'s heightened pleading standard "because the Complaint does not state with particularity that Defendants' conduct related to 'the purchase or sale of a security listed on an American stock exchange, [or] the purchase or sale of any security in the United States," Prior Default Order at 6;

and it appearing that Plaintiffs have now presented evidence that shows, to the extent Defendants actually executed Forex trades pursuant to the Cooperation Agreements, some of those trades were reportedly executed from the United States and Mr. Nielsen was involved in Defendants' activities while living in New Jersey, see Hegrenes Supp. Cert. ¶¶ 5-7; Supp. Hegrenes Supp. Cert., Ex. D, ECF No. 116.6 (showing representation that trades were to be executed by Nilsen after he moved to New Jersey); Kristensen Cert. at 1-2;[6]

and it appearing that to state a claim under Section 10(b) a plaintiff must allege "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss," McCabe v. Ernst & Young, L.L.P., 494 F.3d 418, 424-25 (3d Cir. 2007);

---

[6] Plaintiffs argue that that the Cooperation Agreements between Defendants and Plaintiffs for investment in Forex markets are investment contracts constituting "securities" under Securities and Exchange Act. See S.E.C. v. W.J. Howey Co., 328 U.S. 293, 297 (1946) (explaining investment contracts are securities); Saunders v. Morton, No. 9-125, 2011 WL 1135132, at *4 (D. Vt. Feb 17, 2011) (finding Section 10(b) jurisdiction for trading on foreign exchange currency markets pursuant to investment contracts); Conwill v. Greenberg Traurig, L.L.P., No. 9-4365, 2011 WL 1103728, at *2-7 (E.D. La Mar. 22, 2011) (holding that "foreign currency trades" were securities).

5

and it appearing that Plaintiffs have alleged, inter alia, (1) Defendants falsely represented they were "experts" in foreign markets, provided documentation purporting to show their history of success in the Forex market, and misrepresented the amount they were in fact trading in Forex markets, Compl. ¶¶ 6, 24, 38-39; (2) Defendants acted with wrongful intent, id. ¶¶ 14-16, 36-38, 66 (3) Plaintiffs entered into Cooperation Agreements (i.e., investment contracts) with Defendants for the investment of funds in Forex trading, pursuant to which Defendants executed only minimal trades and lied about the profits, id. ¶¶ 20-27, 61;[7] (4) Plaintiffs relied on Defendants' representations about their expertise and documents falsely showing growth in their accounts from Forex trading and would not have traded but for these misrepresentations, id. ¶¶ 28-31, 68; (5) Plaintiffs lost almost all of the funds they invested with Defendants, id. ¶¶ 36-38, 69; and (6) Plaintiffs' losses were caused by Defendants' scheme and their attempts to conceal the scheme, id. ¶¶ 32, 36-38, 69;

and it appearing that therefore Plaintiffs have stated a claim for a violation of Section 10(b) of the Securities Exchange Act of 1934;

and it appearing that although the Court accepts the facts pled in the Complaint "as true for the purpose of determining liability, the plaintiff must prove damages," Moroccanoil, Inc. v. JMG Freight Grp. LLC, No. 14-5608, 2015 WL 6673839, at *2 (D.N.J. Oct. 30, 2015);

and it appearing that Plaintiffs seek damages in the amount of 55,042,672.14 € (or $65,238,226.30);

---

[7] The Complaint expressly alleges "the Defendants were operating a Ponzi scheme where they represented to their investors, clients and customers that they were making trades in the Forex market when in fact they did not make trades in the Forex market or made a minimal amount of trades." Compl. ¶ 39. Plaintiffs have put forth additional evidence that supports this allegation. See Hegrenes Cert.¶¶ 14-15, ECF No. 105.8; Kristensen Cert. at 1-2. The operation of this type of a "Ponzi scheme" pursuant to an investment contract for the purchase of securities in the Forex markets can constitute a Section 10(b) violation. See S.E.C. v. Desai, 145 F. Supp. 3d 329, 336-37 (D.N.J. 2015); see also Conwill v. Greenberg Traurig, L.L.P., No. 9-4365, 2011 WL 1103728, at *3 (E.D. La. Mar. 22, 2011) (holding scheme to execute foreign currency trades involved the "purchase or sale of securities").

6

and it appearing that in support of their damages Plaintiffs point to an affidavit by Morten Nilsen dated January 17, 2019, ECF No. 105.14, ("Nilsen Affidavit"), but this affidavit does not provide an evidentiary basis for the damages sum requested for each cause of action pled;[8]

**IT IS** on this 28th day of April, 2021;

**ORDERED** that Plaintiff's Renewed Motion for Default Judgment is **DENIED** without prejudice; and it is further

**ORDERED** that any renewed motion must set forth the factual basis for personal jurisdiction over Jordal, including whether he conducted business in New Jersey or caused harm directed at New Jersey;

**ORDERED** that any renewed motion must also set forth and describe a calculation of damages with specificity, and how those damages are recoverable pursuant to each cause of action for which default judgment is sought;

**ORDERED** that given the age of this case, any renewed motion shall be filed within thirty (30) days.

*/s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[8] The Nilsen Affidavit states, inter alia, that Plaintiffs realized certain losses in 2011 and describes a spreadsheet showing Plaintiffs' declining balance as of November 2011. Plaintiffs argue that "[t]hese sworn statements provide the Court with a clear understanding of the significant damages sustained by Plaintiffs—an unprecedented, and staggering, loss of 18,347,558.38 € over the course of a four week period in 2011." Prior Default Judgment Motion at 10, ECF No. 105.1. However, this affidavit itself does not demonstrate damages totaling over $65 million as Plaintiffs submit. In any subsequent filing, Plaintiffs should include evidence that sets forth with specificity the precise damages they incurred, and the methodology used to calculate those damages sought.