UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN HEGRENES, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MORTEN NILSEN, et al.,<br><br>*Defendants*. | Civil Action No. 16-2271<br><br>ORDER |

**THIS MATTER** comes before the Court by way of Plaintiffs John Hegrenes's ("Hegrenes"), LifeClub International, S.A.'s, and LifeClub International LTD.'s (collectively, "LifeClub," and, together with Hegrenes, "Plaintiffs") unopposed Motion for Reconsideration of the Court's April 28, 2021 Order denying Plaintiffs' Renewed Motion for Default Judgment against Defendants Orion Trading Institution, Orion Trading Management, Top Unit Management (collectively, the "Entity Defendants"), and Baard Jordal ("Jordal," and, together with the Entity Defendants, "Defendants"), ECF No. 121;

and it appearing that this action arises out of Defendants' alleged misappropriation of Plaintiffs' funds provided pursuant to Cooperation Agreements for investments in the foreign currency exchange ("Forex") market and related material misrepresentations and omissions in violation of federal and New Jersey law, Compl. ¶¶ 12-46, ECF No. 1.1; [1]

and it appearing that Defendants have failed to answer the Complaint or otherwise respond as of the date of this Order;

---

[1] The Court reincorporates here all findings of fact made in the Court's prior Orders for Default Judgment dated January 3, 2020 and April 28, 2021, ECF Nos. 108, 117. Additionally, all terms not otherwise defined herein have the same meaning as provided in those prior Orders.

1

and it appearing that on May 18, 2016 and July 27, 2017, the Clerk of Court entered default against the Entity Defendants and Jordal, respectively, ECF Nos. 9, 59;

and it appearing that on June 14, 2019, Plaintiffs filed a Motion for Default Judgment seeking entry of judgment against Defendants, ECF No. 105;

and it appearing that on January 3, 2020, the Court issued an Order denying Plaintiffs' Motion without prejudice and allowing Plaintiffs to file an amended motion curing noted deficiencies, ECF No. 108;

and it appearing that on September 18, 2020, Plaintiff filed a Renewed Motion for Default Judgment, ECF No. 116;

and it appearing that on April 28, 2021, the Court issued an Order denying Plaintiffs' Renewed Motion without prejudice and allowing Plaintiffs to file an amended motion (a) curing noted deficiencies regarding the factual basis for personal jurisdiction over Jordal and (b) calculating damages with specificity and describing how those damages are recoverable pursuant to each cause of action for which default judgment is sought, ECF No. 117;

and it appearing that on May 27, 2021, Plaintiffs filed the instant Motion for Reconsideration of the Court's April 28, 2021 Order, ECF No. 121;

and it appearing that Plaintiffs first ask the Court to reconsider the arguments and evidence presented regarding Jordal's contacts with the United States and New Jersey;

and it appearing that with respect to personal jurisdiction, a minimum contacts analysis under the Securities and Exchange Act of 1934 (the "Exchange Act")[2] "focuses on the relationship among the defendant, the forum, and the litigation" and the "contacts must have resulted from the defendant's purposeful conduct toward the forum state, not the unilateral activity of the plaintiff,"

---

[2] In the April 28, 2021 Order, the Court found that Plaintiffs stated a claim under the Exchange Act. ECF No. 117.

Derensis v. Coopers & Lybrand Chartered Accts., 930 F. Supp. 1003, 1014 (D.N.J. 1996) (internal citations omitted);

and it appearing that the necessary "[m]inimum contacts exist where the defendant is (i) doing business in the United States, (ii) doing an act in the United States, or (iii) causing an effect in the United States by an act done elsewhere," id.;[3]

and it appearing that, taking the Complaint as true, Jordal "caused to be mailed and/or transmitted from the United States, including in the State of New Jersey, reports and statements that contained erroneous and fraudulent material regarding investment strategy, the risks involved in such investments, the nature of the investment strategy, and the actual investment activity of the accounts belonging to LifeClub and its members," Compl. ¶ 41, ECF No. 1.1;

and it appearing that Jordal was the Chief Executive Officer of Orion Trading Institution, Hegrenes Cert. Ex. A, ECF No. 105.9;

and it appearing that Jordal directed, operated, and conducted much of the Entity Defendants' "fraudulent Ponzi scheme involving Forex trading from New Jersey through [Morten] Nilsen," ECF No. 116.1 at 29;

and it appearing that Jordal targeted United States investors, used United States brokers in connection with alleged Forex trading, and traded United States currency, id. at 31;

and it appearing that after reconsideration, Plaintiffs have put forth adequate evidence that Jordal, acting as the lead corporate officer for the Entity Defendants, did business in and caused

---

[3] For violations of statutes which allow for nationwide service of process, such as the Exchange Act, "the appropriate analysis is whether the defendants have minimum contacts with the United States generally, not the state in which the federal court sits." Zhengyu He v. China Zenix Auto Int'l Ltd., No. 18-15530, 2020 WL 3169506, at *14 (D.N.J. June 12, 2020) (citing Pinker v. Roche Holdings Ltd., 292 F. 3d 361, 369 (3d Cir. 2002)).

an effect in the United States amounting to sufficient minimum contacts for purposes of establishing personal jurisdiction over Jordal;

and it appearing that Plaintiffs next ask the Court to reconsider whether Plaintiffs have provided a sufficient evidentiary basis for the damages sought;

and it appearing that on default, courts "need not accept the plaintiff's factual allegations regarding damages as true," Innovative Sports Mgmt., Inc. v. Cortez, No. 19-12048, 2020 WL 882131, at *1 (D.N.J. Feb. 24, 2020);

and it appearing that Plaintiffs state that they invested a total of €11,755,200, but submit that €18,347,557.38 represents "approximately 98% of the total principal and profits" that they lost in November 2011, ECF No. 116.1 at 10-11;

and it appearing that Plaintiffs therefore argue that they are entitled to treble damages pursuant to the New Jersey Racketeer Influenced and Corrupt Organization Act ("NJ RICO"), N.J.S.A. § 2C:41-4(a)(8), in the amount of €55,042,672.14 (or $65,238,226.30), representing three times the November 2011 losses, see, e.g., Pl. Mem. at 17, ECF No. 121.1; ECF No. 105.8;

and it appearing that, upon reconsideration, the Court is satisfied at this time that Plaintiffs adequately support an entitlement to their invested total of €11,755,200, plus post-judgment interest, attorneys' fees and costs;[4]

---

[4] Although Plaintiffs have again failed to articulate how damages are recoverable pursuant to each specific cause of action, the Court is satisfied that the total money invested is the appropriate award based on the pleadings and motions. Plaintiffs incorporate their Second Motion by reference and claim it sets forth the basis for seeking damages for each cause of action, see Pl. Mem. at 15, ECF No. 121. However, the Second Motion merely states that Plaintiffs are entitled to the €18,347,557.38 for the money lost in November 2011, relying on spreadsheets purporting to show the total profits on Plaintiffs' accounts without further explanation as to why the Court should award more than their total investment. Plaintiffs also fail to explain why the Court should award them with a return of over 6 million Euro when the Complaint alleges that those same spreadsheets reflect Defendants' misrepresentations of the trades made and falsified numbers. See, e.g., Compl. ¶¶ 33-34. The Court is not satisfied at this time that Plaintiffs are entitled to recover more than their total investment or that they have adequately pled an NJ RICO claim to warrant treble damages. To the extent Plaintiffs disagree with the Court's decision, they may request a proof hearing on damages within thirty (30) days of this Order.

**IT IS** on this 1st day of December, 2021;

**ORDERED** that Plaintiff's Motion for Reconsideration is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that, upon reconsideration, Plaintiffs' Renewed Motion for Default Judgment against Defendants is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that the Entity Defendants and Jordal are jointly and severally liable to Plaintiffs for damages in the amount of €11,755,200,[5] plus post judgment interest, attorneys' fees and costs; and it is further

**ORDERED** that Plaintiffs' Motion is denied to the extent it seeks treble damages under NJ RICO or damages in excess of Plaintiffs' total investment; and it is further

**ORDERED** that Plaintiffs' counsel shall submit an affidavit of services of fees and costs within 30 days for the Court's consideration; and it is further

**ORDERED** that judgment is entered against Defendants in the amount of €11,755,200, which represents Plaintiffs' total investment.

*/s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[5] To the extent that this Judgment will be docketed and enforced in United States courts, Plaintiffs may submit an affidavit calculating the conversion of Euros to US dollars, for which the Court can enter an Amended Judgment.